United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RHONDA JEAN ZUNIGA,

    Plaintiff,

  v.

MICHAEL J. ASTRUE,

    Defendant.

No. C 10-04823 CRB

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**

This case arises from the Social Security Administration's ("SSA's") denial of Plaintiff Rhonda Jean Zuniga's ("Ms. Zuniga's") application for disability insurance benefits. Defendant Michael J. Astrue, the Commissioner of Social Security ("Commissioner" or "Defendant"), denied Ms. Zuniga's claim in March 2010 acting through Administrative Law Judge David R. Mazzi ("ALJ Mazzi"). Because the Appeals Council considered additional material and added it to the record when declining review, that material is part of the administrative record. The additional material includes physician opinions directly bearing on Ms. Zuniga's credibility and ability to work, and raises a reasonable probability that it would change the outcome of Ms. Zuniga's application. As explained below, Ms. Zuniga's Motion for Summary Judgment (dkt. 24) is GRANTED IN PART and Defendant's Motion for Summary Judgment (dkt. 29) is DENIED. This matter is REMANDED to the Social Security Administration for further administrative proceedings.

## I.     FACTUAL BACKGROUND

Ms. Zuniga applied for disability insurance benefits under Titles II and XVI alleging that she became disabled on March 31, 2004. Tr. (dkt. 14) at 15. Ms. Zuniga filed her claim on February 29, 2008, and the Commissioner denied it initially on May 6, 2008, and upon reconsideration on September 23, 2008. Id. Upon Ms. Zuniga's request, a hearing was held before ALJ Mazzi on December 23, 2009. Id.

In a decision dated March 12, 2010, ALJ Mazzi denied benefits, concluding that, given Ms. Zuniga's age, education, work experience, and residual functional capacity, she could engage in substantial gainful employment in the national economy. Id. at 21. At Step One, ALJ Mazzi found that Ms. Zuniga had not engaged in substantial gainful employment during the disability period. Id. at 17. At Step Two, ALJ Mazzi found that Ms. Zuniga suffered from degenerative disk disease of the lumbar spine, asthma, hypothyroidism, obesity, migraine headaches, and depression, all qualifying as severe impairments. Id. at 18. At Step Three, ALJ Mazzi found that Ms. Zuniga's mental impairment mildly restricted her activities of daily living; mildly restricted social functioning; mildly to moderately limited concentration, persistence, or pace; and that her impairment did not present any extended episodes of decompensation. Id. Based on these ratings, ALJ Mazzi concluded at Step Three that Ms. Zuniga's mental and physical disabilities failed to meet or equal any of the listed impairments. Id.

At Step Four, ALJ Mazzi determined that Ms. Zuniga had the residual functional capacity to "perform a range of sedentary to light work . . . with the need for a sit to stand option every 15 minutes, and the need to avoid respiratory irritants." Id. To reach this finding, ALJ Mazzi considered Ms. Zuniga's physical and mental limitations based on physician reports. Id. at 19-20. In limiting Ms. Zuniga's credibility, ALJ Mazzi found that Ms. Zuniga's claims of severity were outweighed by the medical evidence and the record as a whole. Id. at 20. He further concluded that, based on Ms. Zuniga's limitations, she could not perform any past relevant work. Id. at 21.

At Step Five, ALJ Mazzi determined that, although Ms. Zuniga was unable to perform any past relevant work, she could successfully adjust to other work given her residual functioning capacity. Id. The independent vocational expert testified that jobs accommodating Ms. Zuniga's limitations were available. Id. at 21-22. Given his finding that Ms. Zuniga could adjust to the available jobs, ALJ Mazzi concluded that Ms. Zuniga was "not disabled" and denied benefits. Id. at 22.

Ms. Zuniga appealed ALJ Mazzi's denial of benefits to the Social Security Administration Appeals Council on March 26, 2009. Id. at 1, 100. On September 11, 2010, the Appeals Council denied Ms. Zuniga's request for review after considering additional evidence submitted with the appeal. Id. at 1-2, 5. Ms. Zuniga filed the instant action on October 25, 2010. See Complaint (dkt. 1).

## II.   LEGAL STANDARD

The district court may review the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, and may be set aside only if an

3

improper legal standard was applied in weighing the evidence. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); see also Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

Summary judgment is a method for disposing of an action in which there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed R. Civ. P. 56. The burden of establishing the lack of a genuine issue of material fact is on the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. See id. at 248. All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

## III.  DISCUSSION

The Commissioner is governed by a five-step sequential evaluation process when determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At Step One, the Commissioner evaluates whether the claimant has engaged in Substantial Gainful Activity ("SGA") since filing for benefits. 20 C.F.R. § 404.1520(a)(4)(i). At Step Two, if the claimant has not engaged in SGA, the Commissioner determines whether the alleged impairment is sufficiently severe to limit the claimant's ability to work. 20 C.F.R. § 404.1520(a)(4)(ii). At Step Three, if the impairment is sufficiently severe, the Commissioner determines whether the alleged impairment (1) is listed on the Listings of Impairments and (2) meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(iii); see 20 C.F.R. Pt. 404, Subpt. P, App. 1. At Step Four, if the impairment is not listed on the Listings of Impairments or does not meet the duration requirement, the Commissioner makes a determination of Residual Functioning Capacity to evaluate whether the claimant can return to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). And at Step Five, if the claimant cannot return to past relevant work, the Commissioner must determine whether the claimant can engage in other

types of substantial gainful work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

Ms. Zuniga's challenges are limited to ALJ Mazzi's analysis and conclusions in Steps Three and Four.  As a threshold matter, Ms. Zuniga asks that the Court consider additional material not before ALJ Mazzi but submitted to the Appeals Council.  Pl. Mot. (dkt. 24) at 9.  The Appeals Council considered the additional material and made it part of the record before deciding to deny review and thus making ALJ Mazzi's decision final.  Tr. at 1.  When the Appeals Council does so, it is appropriate for the reviewing court to consider the material on review.  See Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993).  Therefore, the Court reviews ALJ Mazzi's decision in light of the additional evidence presented to the Appeals Council.

### A.     Step Three–Equivalence

Ms. Zuniga first challenges ALJ Mazzi's Step Three determination that her impairments did not meet or equal the impairments in the Listing of Impairments.  Pl. Mot. at 19.  At Step Three, the ALJ is tasked with determining whether the claimant's impairments are medically equivalent to any impairment on the Listing of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii); see 20 C.F.R. Pt. 404, Subpt. P, App. 1.  An impairment is equivalent if "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).  The Listing of Impairments mostly contains impairments that are permanent or expected to result in death.  20 C.F.R. § 404.1525(c)(3).

#### 1.     ALJ Mazzi Provided Reasoning for His Step Three Conclusion In His Step Four Discussion

Ms. Zuniga claims that ALJ Mazzi's conclusion was boilerplate and that therefore the denial should be reversed.  Pl. Mot. at 19.  When considering a combination of impairments, the ALJ must explain his evaluation of the combined effects and cannot simply recite a boilerplate conclusion.  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990); Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  ALJ Mazzi considered Ms. Zuniga's physical impairments under Listing Section 1.02A pursuant to Ms. Zuniga's claim under that section.  Tr. at 18, 187.  Listing Section 1.02 addresses major dysfunction of a joint, requiring (1)

5

gross anatomical deformity; (2) chronic joint pain and stiffness with signs of limitation of motion; and (3) medically acceptable imaging of the affected joint showing joint space narrowing, bony destruction, or ankylosis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. Subsection A also requires that the impairment involve a major peripheral weight-bearing joint such as the hip, knee, or ankle, resulting in the inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A.

Here, on first glance, ALJ Mazzi's Step Three conclusion (that Ms. Zuniga's "limitations supported by the record as a whole fall far short of the requirements of Listing Section 1.02A") appears conclusory and insufficient. Tr. at 18. However, ALJ Mazzi's Step Three conclusion refers to his findings in Step Four, where he concludes that Ms. Zuniga's impairments fall "far short of the requirements of Listing Section 1.02A." Id. In his Step Four discussion of Ms. Zuniga's lower back pain, ALJ Mazzi notes that an MRI showed only "mild degenerative changes." Id. at 19, 535. The MRI report characterizes the disc protrusion as "very mild" and the loss of height as "minimal." Id. Ms. Zuniga did not present any argument or point to evidence that the back pain made her unable to ambulate effectively. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(b) (inability to ambulate effectively defined as requiring a hand-held assistive device limiting the function of both upper extremities). Furthermore, the MRI analysis supports ALJ Mazzi's finding that Ms. Zuniga's impairment fell "far short" of the Listing Section 1.02A requirements because she only experienced only mild objectively determined symptoms. See Tr. at 535. Dr. Boorstein's November 2009 notes confirm that the objectively determined symptoms remained mild. Id. at 768. ALJ Mazzi's discussion of Ms. Zuniga's spinal impairment therefore demonstrates that he gave the impairment full consideration.

### 2. ALJ Mazzi Properly Applied and Documented the Special Technique When Evaluating Ms. Zuniga's Mental Impairments

Ms. Zuniga claims that ALJ Mazzi failed to follow or document the "special technique" mandated by the regulations when evaluating mental impairments at Step Three. Pl. Mot. at 12. When considering mental impairments, the ALJ must follow a "special technique" and rate the degree of limitation in four areas of mental functioning: (1) activities

6

of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a. The regulations require an ALJ to document the application of the "special technique" in the decision. 20 C.F.R. § 404.1520a(e). ALJ Mazzi applied and documented the "special technique," finding that Ms. Zuniga experienced mild restriction in activities of daily living, mild difficulties in social functioning, mild to moderate difficulties with regard to concentration, persistence, or pace, and no extended episodes of decompensation. Tr. at 18.

Ms. Zuniga further argues that ALJ Mazzi improperly applied the mental restriction ratings he assigned in Step Three. Pl. Mot. at 14. Listing Section 12.04B requires a rating of "marked restriction" in at least two of the first three categories or one "marked restriction" rating and repeated episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04B. ALJ Mazzi's ratings of only one "mild to moderate" and two "mild" with no episodes of decompensation fall short of the Listing Section 12.04B requirements. ALJ Mazzi also considered the requirements of Listing Section 12.04C and found that the evidence fails to establish any of the required criteria. Tr. at 18. Ms. Zuniga does not point to any evidence in the record that ALJ Mazzi did not consider but that could support equivalence under Listing Section 12.04. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (a claimant must offer a theory of equivalence and present specific supporting evidence). Therefore, substantial evidence supported ALJ Mazzi's conclusion that Ms. Zuniga did not meet or equal Listing Section 12.04.

Ms. Zuniga also claims that ALJ Mazzi failed to comply with 20 C.F.R. § 404.1520a(d)(1), which notifies claimants that if the degree of limitation in the first three functional areas is rated "mild" or "none" and the fourth area is rated "none," the ALJ will generally conclude that the impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). Ms. Zuniga points out that ALJ Mazzi concluded that her mental impairment was severe at Step Two. Pl. Mot. at 14. However, ALJ Mazzi's conclusion that Ms. Zuniga's mental impairment was severe at Step Two does not conflict with 20 C.F.R. § 404.1520a(d)(1). At Step Three, ALJ Mazzi rated Ms. Zuniga's mental restrictions as "mild to moderate" in the

7

concentration, persistence, or pace category, not "mild" in all of the first three functional areas. Furthermore, 20 C.F.R. § 404.1520a(d)(1) does not require the ALJ to conclude that an impairment is not severe. Thus, ALJ Mazzi's Step Two finding that Ms. Zuniga's mental impairment was severe was not inconsistent with his finding at Step Three that it did not meet or equal Listing Section 12.04.

### 3. ALJ Mazzi Considered Expert Opinion Evidence on Equivalence

Ms. Zuniga further contends that ALJ Mazzi's Step Three finding failed to comply with agency policy to have the ALJ consider the judgment of a designated physician when making the Step Three equivalence determination. Pl. Mot. at 20; see Social Security Ruling 96-6p, 61 Fed. Reg. 34466, 34468 (1996). A Disability Determination and Transmittal form received into evidence satisfies the policy to consider expert opinion evidence. SSR 96-6p, 61 Fed. Reg. at 34468. Here, the record contains two Disability Determination and Transmittal forms completed by disability examiners and physicians, both concluding that Ms. Zuniga was not disabled. See Tr. at 53-54. Therefore, ALJ Mazzi complied with the Commissioner's policy by receiving the two Disability Determination and Transmittal forms into evidence.

Substantial evidence supported ALJ Mazzi's Step Three conclusions that Ms. Zuniga's impairments did not meet or equal any of the listed impairments. ALJ Mazzi properly evaluated Ms. Zuniga's impairments in his Step Three analysis, though much of that analysis was contained within his Step Four discussion. ALJ Mazzi properly applied and documented the "special technique" for evaluating mental impairments, and his findings that Ms. Zuniga's impairments did not meet or equal any listed impairments is supported by substantial evidence. Finally, ALJ Mazzi complied with the Commissioner's policy of considering expert opinion evidence on equivalence by receiving the Disability Determination and Transmittal forms into evidence. Because ALJ Mazzi properly concluded at Step Three that Ms. Zuniga's impairments did not meet or equal any of the listed impairments, the analysis proceeds to Step Four to evaluate Ms. Zuniga's residual functioning capacity.

### B. Step Four–Residual Functioning Capacity

Ms. Zuniga next claims that ALJ Mazzi improperly discounted her testimony at Step Four, resulting in a residual functioning capacity ("RFC") finding that is not supported by the evidence. Pl. Mot. at 11. She also challenges ALJ Mazzi's evaluation of her physician's treatment notes in reaching the RFC finding. Id. at 20-25. At Step Four, the ALJ is tasked with assessing a claimant's RFC based on the record and determining whether that RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

#### 1. ALJ Mazzi's Credibility Finding Is Unable to Account for the Relevant New Material Considered by the Appeals Council

An ALJ is to evaluate credibility using ordinary techniques. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Specific findings must be made to allow the reviewing court to conclude that the ALJ did not "'arbitrarily reject the claimant's testimony.'" Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc) (quoting Elam v. R.R. Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). A claimant's statements of pain or disability are not alone enough to establish eligibility for disability benefits. 42 U.S.C.A. § 423(d)(5)(A).

Ms. Zuniga challenges ALJ Mazzi's credibility analysis, which led him to devalue her claims of disabling pain. Pl. Mot. at 22, 24. Assessing the credibility of a claimant's testimony regarding subjective pain requires the ALJ to engage in a two-step process. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably produce the pain. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). Second, if the first step is satisfied, the ALJ can only reject the claimant's testimony by offering specific reasons for doing so or based on a finding of malingering. Id. The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's statements. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2007).

Here, ALJ Mazzi found that Ms. Zuniga's medically determinable impairments could be expected to cause the alleged symptoms. Tr. at 19. However, ALJ Mazzi discounted Ms. Zuniga's claims as to the severity and limiting effects of her symptoms. Id. Ms. Zuniga

9

1 challenges ALJ Mazzi's credibility findings as to her lower back pain, migraines, and mental
2 impairment. Pl. Mot. at 13, 21-22.

### a. Ms. Zuniga's Claimed Back Pain

ALJ Mazzi noted that Ms. Zuniga's claims of excruciating lower back pain and incapacitation were unsupported by clinical findings given that the July 2009 MRI of her spine showed only "mild degenerative changes." Tr. at 19; see Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (MRI showing "only mild degenerative disc disease" is properly considered as a factor when evaluating the credibility of a claimant's pain and disability testimony)  Therefore, ALJ Mazzi properly considered other sources of evidence in addition to the lack of objective medical findings to evaluate the credibility of Ms. Zuniga's claims. See 20 C.F.R. § 404.1529(c)(3). ALJ Mazzi relied on Ms. Zuniga's daily activities as reported by Ms. Zuniga and her husband, including caring for her children, making meals, cleaning the house, driving, shopping, using the computer, walking, and swimming. Tr. at 20, 144-59. Non-work activities that are inconsistent with a claim of total disability will undermine the claimant's credibility. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (claimant's daily activities undermined her claims of total disability). Therefore, ALJ Mazzi provided clear, convincing, and specific reasons for discounting Ms. Zuniga's claim that her pain caused total disability.

However, the new material considered by the Appeals Council contains treatment notes showing that Ms. Zuniga's treatment program has increased in intensity. See 20 C.F.R. § 404.1529(c)(3)(v) (treatment history is relevant to evaluating credibility). Although a November 2009 MRI showed only "mild facet changes . . . [with a] possible small annular tear but still [with] fairly well preserved disc height," the increased treatment regimen might corroborate Ms. Zuniga's claims of pain. Id. at 768. Dr. Boorstein's notes indicate that he treated Ms. Zuniga with facet injections without any improvement in her pain, and subsequently abandoned any plan for further injections. Id. The notes also state that Ms. Zuniga received oral steroids. Id. Ms. Zuniga also received a lumbar discogram that was

1  discontinued due to her discomfort and pain during the procedure. Id. at 769. Ms. Zuniga's
2  credibility should be re-evaluated in light of her willingness to seek the heightened level of
3  treatment and their ineffectiveness.

### b. Ms. Zuniga's Claimed Migraine Headaches

ALJ Mazzi observed that Ms. Zuniga's asthma and migraines were under "reasonably good control" with limited medical contacts. Tr. at 19. ALJ Mazzi did not question the existence of Ms. Zuniga's migraines, only their severity and disabling effects. Id. Conservative treatment of pain suggests that the pain is not disabling. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007). A favorable response to conservative treatment further undermines claims of disabling pain. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008). Ms. Zuniga's treatment notes suggest that her migraines were resolved after positive responses to medication. Tr. at 228, 233-34, 407. ALJ Mazzi provided clear, convincing, and specific reasons supporting his credibility finding regarding the severity of Ms. Zuniga's migraines and their disabling effects.

However, the additional materials considered by the Appeals Council are relevant to Ms. Zuniga's credibility regarding the migraine headaches. Dr. Rubin, primary care physician after Dr. Crump, provided a letter explaining his evaluation of Ms. Zuniga's migraine headaches. Id. at 765. Dr. Rubin states that Ms. Zuniga "has a longstanding history of migraine headaches going back for at least several years." Id. Dr. Rubin then states that Ms. Zuniga's "headaches occur on average 4-5 times per month and are typically debilitating for hours." Id. Although Dr. Rubin did not treat Ms. Zuniga for most of the period at issue, his review of Ms. Zuniga's condition should be considered. See 20 C.F.R. § 404.1572(d). Given this potentially corroborating evidence, Ms. Zuniga's credibility regarding her claimed migraine headaches should be re-evaluated.

### c. Ms. Zuniga's Claimed Depression

ALJ Mazzi also discounted Ms. Zuniga's claim of total disability from her depression because he found that the death of Ms. Zuniga's grandmother exacerbated the condition. Tr. at 19. ALJ Mazzi found that outside of the time period in May and June 2008 immediately

11

1 following the death of Ms. Zuniga's grandmother, her treatment consisted only of anti-
2 depressant medication. Id. Many of Ms. Zuniga's psychologists noted that her symptoms
3 were related to the loss of her grandmother. See id. at 404, 422, 507. Furthermore, Doug
4 Dolnak, M.D., evaluated Ms. Zuniga in August 2008 and rated her global assessment of
5 functioning at 65, indicating that she could perform simple repetitive tasks with only mild
6 problems and maintain concentration, persistence, and pace. Id. at 19, 429. This evidence
7 undermines Ms. Zuniga's claim of total disability and supports ALJ Mazzi's credibility
8 evaluation.

     However, the new material presented to the Appeals Council includes a psychiatric evaluation performed by Mathilde Weems, M.D., on August 21, 2010, well after Ms. Zuniga lost her grandmother. Id. at 810-13. Dr. Weems diagnosed Ms. Zuniga with similar conditions but differing severity as compared to Dr. Dolnak, including a global assessment of functioning score of 52.[1] See id. at 429, 812-13. Additionally, Dr. Michael D. Ward, a psychiatric evaluator from the Napa Community Mental Health Clinic, evaluated Ms. Zuniga on April 16, 2010, assigning her a global assessment of functioning score of 62. Id. at 793. Given the disparity between the three reports regarding Ms. Zuniga's ability to function and ALJ Mazzi's reliance on Dr. Dolnak's report when assessing Ms. Zuniga's credibility, the reports from the two physicians should be evaluated together and their impact on Ms. Zuniga's credibility weighed accordingly

     ALJ Mazzi provided clear, convincing, and specific reasons justifying his credibility findings and substantial evidence supported his decision to devalue Ms. Zuniga's subjective claims of pain. However, the additional materials submitted by Ms. Zuniga to the Appeals Council could serve to corroborate her pain and disability testimony. Therefore her credibility should be re-evaluated upon remand.

---

[1] A global assessment of functioning score of 61 to 70 indicates mild symptoms with some difficulty in social, occupations, or school functioning, but generally functioning pretty well. Def. Mot. at 6 n.3 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2003)). A score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupations, or school functioning. Pl. Mot. at 8 n.3 (citing DSM-IV-TR at 34).

12

### 2. ALJ Mazzi's Mental Impairment Evaluation Is Unable to Account for the Relevant New Materials Considered by the Appeals Council

Ms. Zuniga claims that ALJ Mazzi failed to discuss the records of her mental health care providers Pat Dwyer, Ph.D., and Everett McMahon, Psy.D., and failed to give full consideration to Dr. Dolnak's report.  Pl. Mot. at 13.  Although an ALJ is required to consider all evidence, the ALJ is not required to discuss every piece of evidence when it is not significant or probative.  Howard v. Barnhart, 341 F.3d 1006, 1010 (9th Cir. 2003) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

#### a. Dr. Dolnak

ALJ Mazzi's decision demonstrates that he fully considered Dr. Dolnak's report.  ALJ Mazzi noted that Dr. Dolnak diagnosed Ms. Zuniga with a global assessment of functioning of 65, a rating consistent with his findings that Ms. Zuniga suffered from mild to moderate restrictions in mental functioning.  Id.  The remainder of Dr. Dolnak's report is consistent with ALJ Mazzi's findings, stating that Ms. Zuniga "can perform simple and repetitive tasks," and that, while she may have "mild difficulty with detailed and complex tasks secondary to some mild difficulty with attention and concentration," Ms. Zuniga could "perform work activities on a consistent basis," and "can maintain regular attendance . . . and complete the normal workday routine without interruptions."  Id. at 429.  ALJ Mazzi's findings are consistent with Dr. Dolnak's report.

#### b. Dr. Dwyer

ALJ Mazzi did not explicitly mention Dr. Dwyer's progress notes.  See id. at 19.  ALJ Mazzi noted that Ms. Zuniga sought psychiatric care during a period of exacerbated symptoms related to the death of her grandmother.  Id.  ALJ Mazzi's finding that Ms. Zuniga experienced exacerbated symptoms is consistent with limiting the probative value of Dr. Dwyer's treatment notes as discussing a period when Ms. Zuniga's symptoms were unusually elevated by external factors rather than consistent and indicative of future work capacity.  Furthermore, Dr. Dwyer's notes indicate that Ms. Zuniga was "mildly" to "moderately dysphoric" but maintained a hopeful outlook.  Id. at 469, 473.  Dr. Dwyer's

13

notes also state that Ms. Zuniga experienced improved mood in response to a change in medication. Id. at 474; see Tommasetti, 533 F.3d at 1040. Dr. Dwyer's notes are generally consistent with ALJ Mazzi's findings, and did not require individual discussion.

### c.   Dr. McMahon

Similarly, Dr. McMahon's treatment notes are consistent with Ms. Zuniga's elevated symptoms following the loss of her grandmother. Dr. McMahon's notes recount that Ms. Zuniga sought services "shortly after the death of her grandmother" and had "life problems including grief over loss of grandmother." Tr. at 507. Moreover, Dr. McMahon further found Ms. Zuniga to be "verbal and articulate, clear and coherent . . . [with g]ood insight and judgment." Id. at 509. Dr. McMahon's treatment notes did not contain any information contrary to ALJ Mazzi's finding or the treatment notes of other providers and therefore had limited probative value and did not require individualized discussion.

Because Dr. Dwyer and Dr. McMahon treated Ms. Zuniga shortly after she lost her grandmother, the evidence supports ALJ Mazzi's conclusion that the symptoms they observed were heightened due to Ms. Zuniga's loss. Furthermore, the contents of the Dwyer and McMahon notes are consistent with ALJ Mazzi's finding that Ms. Zuniga suffered from depression but that the condition did not significantly restrict her mental functioning. Therefore, ALJ Mazzi provided clear and convincing reasons for finding that the notes were of limited probative value when determining Ms. Zuniga's long-term functioning.

### d.   New Material

Ms. Zuniga's new material presented to the Appeals Council but not to ALJ Mazzi includes a psychiatric evaluation report prepared by Mathilde Weems, M.D., on August 21, 2010. Tr. at 810-13. The report includes a diagnosis of depression and assigns Ms. Zuniga a global assessment of functioning score of 52. Id. at 813. In the functional assessment section, Dr. Weems opines that "it is unlikely that [Ms. Zuniga] would be able to maintain regular attendance in the workplace." Id. Dr. Weems's report covers the same material as Dr. Dolnak's, but reaches different diagnoses and conclusions about Ms. Zuniga's ability to function. See id. at 429, 813. Because the two reports conflict, the credibility of each report

14

must be evaluated and the reports weighed accordingly. After the reports are weighed, the impact of the reports on Ms. Zungia's RFC should be determined.

Additionally, Dr. Rubin's treatment notes were not originally part of the record, but were added to the record by the Appeals Council. See Tr. at 5. Dr. Rubin, Ms. Zuniga's primary care provider after Dr. Crump, wrote a letter to the Appeals Council describing Ms. Zuniga's symptoms in conjunction with her migraine headaches. Id. at 765. Dr. Rubin acknowledges that Ms. Zuniga has experienced migraines for a number of years, but that examinations between headaches show normal function. Id. Dr. Rubin notes that Ms. Zuniga has been given prophylactic treatment in the past without response. Id. Dr. Rubin concludes that Ms. Zuniga's "headaches occur on average 4-5 times per month and are typically debilitating for hours per each episode. Due to the intensity of the headaches I would not expect that she would be able to work at all on the days when she has the headaches." Id. Dr. Rubin's statements regarding the frequency and severity of Ms. Zuniga's migraine headaches and their impact on Ms. Zuniga's RFC should be evaluated. See 20 C.F.R. § 404.1527(d). Although Dr. Rubin's statement that Ms. Zuniga cannot work when experiencing headaches is a conclusion reserved for the Commissioner and therefore not binding, its impact on Ms. Zuniga's RFC must be addressed. See 20 C.F.R. § 404.1527(e); SSR 96-5p, 61 Fed. Reg. at 34474.

### 3. ALJ Mazzi's Physical Impairment Evaluation Is Unable to Account for the Relevant New Materials Considered by the Appeals Council

Ms. Zuniga challenges ALJ Mazzi's evaluation of her physical impairments by arguing that ALJ Mazzi failed to consider the reports of treating physicians Stephen Crump, M.D., and Peter Philip Boorstein, M.D. Pl. Mot. at 16. Ms. Zuniga also contends that ALJ Mazzi failed to properly address her obesity when evaluating her RFC. Id. at 18. Finally, Ms. Zuniga claims that the additional material contain new treatment notes and letters from Dr. Rubin and Dr. Boorstein directly relevant to her ability to work. Id. at 17-18.

15

#### a. Dr. Crump

ALJ Mazzi explicitly stated that he considered Dr. Crump's opinion when evaluating Ms. Zuniga's RFC. Tr. at 20. Dr. Crump completed a Residual Functional Capacity form, though nearly every entry is qualified with "patient reports." Id. at 541-50. Step Four tasked ALJ Mazzi with evaluating the evidence in the record and determining Ms. Zuniga's RFC. ALJ Mazzi was not bound by Dr. Crump's findings, especially when Dr. Crump qualified the entries as being reported by Ms. Zuniga. See Social Security Ruling 96-2p, 61 Fed. Reg. 34490 (1996) (whether an opinion is well-supported by medically acceptable diagnostic techniques impacts its probative value). Dr. Crump's report primarily documented Ms. Zuniga's own reported symptoms and limitations, and therefore had limited probative value.

Furthermore, Dr. Crump's report does not conflict with ALJ Mazzi's RFC assessment. Dr. Crump found that Ms. Zuniga could lift and carry up to 10 pounds continuously and up to 20 pounds frequently, imposed postural and environmental limitations, and identified Ms. Zuniga's need to change positions every 20 to 30 minutes. Tr. at 20, 541-50. ALJ Mazzi's findings are more generous on some aspects of the RFC and more stringent on others, but are not inconsistent with Dr. Crump's report. ALJ Mazzi's finding limited Ms. Zuniga to lifting no more than 10 pounds frequently and no more than 20 pounds at any time. Id. at 18, 20 C.F.R. § 416.967(b). ALJ Mazzi further imposed a sit or stand option every 15 minutes along with environmental limitations. Tr. at 18. Dr. Crump did not keep Ms. Zuniga out of work for a significant period, contrary to Ms. Zuniga's characterization of his treatment notes. See Pl. Mot. at 16. Instead, the record shows that Dr. Crump often noted that Ms. Zuniga was not working at the time he treated her. See, e.g., Tr. at 331, 482, 555, 575. Dr. Crump did extend Ms. Zuniga's disability for a three-month period, but there is no evidence supporting a two-year off-work order. See Pl. Mot. at 16; Tr. at 332, 384.

#### b. Dr. Boorstein

Ms. Zuniga also faults ALJ Mazzi for not giving proper consideration to the reports of Dr. Peter Phillip Boorstein, M.D. Pl. Mot. at 17. The only treatment notes from Dr. Boorstein before ALJ Mazzi were from November 2007 and September 2009. Id. at 313-14,

16

1 589-90. These reports do not undermine ALJ Mazzi's findings. The November 2007 report
2 found only "mild paracentral disc protrusion" and "mild lack of normal signal intensity." Id.
3 at 313. The September 2009 report noted continuing lower back pain. Id. at 589. Neither of
4 the reports provided by Dr. Boorstein and considered by ALJ Mazzi undermine ALJ Mazzi's
5 evaluation of Ms. Zuniga's RFC. ALJ Mazzi's findings provide for light work with a sit or
6 stand option every 15 minutes, consistent with the lower back pain discussed in Dr.
7 Boorstein's reports. Id. at 18.

8 However, the material considered by the Appeals Council contained an opinion letter
9 from Dr. Boorstein summarizing Ms. Zuniga's symptoms. Id. at 766. In those materials, Dr.
10 Boorstein opined that "it would be very difficult to find employment with the level of pain
11 [Ms. Zuniga] presents with," though Dr. Boorstein qualified the statement based on the
12 limited visits. Id. Dr. Boorstein also explicitly stated that the letter was "not a declaration of
13 disability nor a functional capacity examination." Id. The notes in the additional material
14 contain new treatments, including oral steroids, a lumbar discogram, and facet block
15 injections. Id. at 645-46, 650, 675. These treatment notes and Dr. Boorstein's letter suggest
16 that Ms. Zuniga's condition could be more severe than the MRI shows, and their impact on
17 Ms. Zuniga's RFC should be evaluated.

### c. Obesity

19 Ms. Zuniga's final challenge is that ALJ Mazzi failed to consider her obesity when
20 determining her RFC and also failed to include it in his hypothetical posed to the vocational
21 expert at Step Five to identify work that Ms. Zuniga could perform. Pl. Mot. at 18. Obesity
22 is a factor throughout the sequential analysis, including at the Step Four RFC determination.
23 See Social Security Ruling 02-1p, 67 Fed. Reg. 57859, 57862-63 (2002). At Step Four, the
24 claimant has the burden of proof. See Valentine, 574 F.3d at 698. Ms. Zuniga fails to satisfy
25 her burden of proof because she has not identified any additional functional limitations due to
26 her obesity that ALJ Mazzi failed to consider. See Pl. Mot. at 18; Burch v. Barhart, 400 F.3d
27 676, 684 (9th Cir. 2005). Furthermore, Ms. Zuniga's medical records indicate that her
28 treating physicians were aware of her obesity but did not identify any functional limitations

that ALJ Mazzi did not consider. See, e.g., Tr. at 491 (bariatric consultation requested by Dr. Crump), 589 (Dr. Boorstein notes include consideration of obesity). Finally, at Step Five, ALJ Mazzi did not have to include obesity in his hypothetical to the vocational expert because Ms. Zuniga's RFC already included all limitations and restrictions supported by the record. See Burch, 400 F.3d at 684.

### C. Remand Is Proper to Allow the Commissioner to Consider the New Evidence

A reviewing court may remand for consideration of new evidence when the evidence is material. See Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990). Evidence is material when "there is a reasonable possibility that the new evidence would have changed the outcome." Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984). Although ALJ Mazzi's decision was supported by substantial evidence based on the record before him, the Appeals Council considered new evidence and added it to the record. Tr. at 1-2, 5. In light of the new evidence, ALJ Mazzi's decision insufficiently addresses the treatment notes and physician opinions. The new material also affects ALJ Mazzi's evaluation of Ms. Zuniga's credibility regarding her subjective pain symptoms.

Because ALJ Mazzi based his RFC determination primarily on his evaluation of Ms. Zuniga's credibility, remand is proper for re-evaluation. The letters from Dr. Rubin and Dr. Boorstein corroborate Ms. Zuniga's claims and undermine ALJ Mazzi's credibility analysis. The letters support Ms. Zuniga's statements about the intensity, persistence, and limiting effects of her migraines and back pain. See Tr. at 765-66. Because ALJ Mazzi did not have the opportunity to consider this evidence, he could not provide specific reasons for discounting the evidence in reaching his final conclusion on Ms. Zuniga's credibility. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ must identify what evidence that is credible and what evidence undermines the claimant's statements).

Furthermore, the new evidence that Ms. Zuniga submitted details symptoms and contains opinions from physicians on Ms. Zuniga's ability to work. See id. at 765-66. In particular, Dr. Rubin's letter summarizes Ms. Zuniga's migraine symptoms and treatments, and Dr. Rubin opines on their impact on her ability to work. Id. at 765. Dr. Boorstein's

18

letter similarly addresses the impact of Ms. Zuniga's back pain on her ability to work. Id. at 766. ALJ Mazzi did not have the opportunity to review these letters. Although the new material is not conclusive of disability, there is a reasonable probability that the letters and treatment notes would have changed the outcome of the Step Four RFC determination. See Social Security Ruling 96-5p, 61 Fed. Reg. 34471, 34474 (1996) (medical opinions on inability to work must be considered, but are never binding). Further administrative proceedings will allow the Commissioner to re-evaluate Ms. Zuniga's credibility and address whether, in light of the new information, Ms. Zuniga's impairments further limit her Step Four RFC and Step Five ability to find full-time employment.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Ms. Zuniga's Motion for Summary Judgment and DENIES the Social Security Administration's Motion for Summary Judgment. This matter is REMANDED to the Social Security Administration for further administrative proceedings.

**IT IS SO ORDERED.**

Dated: February 14, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE